UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE No.:

**JHONNY TABORDA**, individually and
on behalf of those similarly situated,

**Plaintiff,** **DEMAND FOR JURY TRIAL**

**vs.**

**FREEDOM MORTGAGE CORPORATION**,

**Defendant.**
_______________________________________/

## CLASS ACTION COMPLAINT

Plaintiff, Jhonny Taborda (hereinafter "Taborda" or "Plaintiff") by and through his undersigned counsel, brings this action against Defendant, Freedom Mortgage Corporation ("Defendant" or "Freedom"), for violations of the Fair Debt Collection Practices Act (the "FDCPA"), Section 559.72(9) of the Florida Consumer Collection Practices Act, (the "FCCPA"), and Section 701.04(1), Florida Statutes. In support Plaintiff alleges the following:

## NATURE OF THE ACTION

1. This is a putative class action brought through Fed. R. Civ. P. 23. It is brought by a homeowner and consumer on his own behalf and on behalf of all others similarly situated, against one of the country's largest mortgage loan originator and servicer of residential mortgage loans, for its systemic violations of consumer protection statutes, debt collection practices and its servicing obligations to consumers and property owners pursuant to law, in failing to provide homeowners with an accurate statement regarding the mortgages it services.

2. Defendant has an obligation to prepare "payoff statements" that set forth the amounts required to fully satisfy all obligations secured by the loan serviced by Defendant. These payoff statements include information such as the outstanding principal balance, outstanding interest, amounts held in escrow, fees associated with the account, and projected interest if the amount due is paid in full by a certain date.

3. Specifically, in this action Freedom, upon information and belief, based on Freedom's standard forms, engages in a pattern and practice of failing to provide Plaintiff and members of the Class with accurate payoff statements accurately and properly enumerating the charges as required by law. Freedom instead sends payoff statements which contain a "total payoff" amount to satisfy the loan, with no substantiation as to the charges that make up this amount, and state that the "total payoff amount" includes "other associated fees" but does not explain what these fees include, how they were derived, or even if they were actually incurred as demonstrated by the uniform deficient payoff letters, including Exhibit C. These fees and the manner Freedom discloses them are unlawful. Moreover, Freedom engages in a pattern and practice of refusing to provide payoff statements, causing clouds on title of Plaintiff's and Class Members' homes, frustrating their ability to refinance or sell the property and causing them to suffer damages.

4. As a direct result of Defendant's delay in producing an accurate payoff statement, Plaintiff was delayed in selling his home and incurred additional expenses in so doing had Defendant properly provided a detailed and accurate payoff statement as required. Plaintiff and Class Members are Florida homeowners with mortgages serviced by Freedom in default or foreclosure. Freedom is the owner and servicer of the residential mortgages which encumber Plaintiff's and Class Members' homes and, as such, regularly acts as a debt collector.

## PARTIES JURISDICTION AND VENUE

5. Plaintiff Jhonny Taborda is a Florida homeowner who lives in Miami-Dade County, Florida and owns the property at issue located at 156 NE 24th Avenue, Homestead, FL 33033. On August 2, 2024, through his single member LLC, Ashbry LLC, Taborda purchased the home via a certificate of title issued through a homeowners' association foreclosure sale.

6. Freedom Mortgage Corporation, a New Jersey corporation, is a national mortgage lender and servicer with its headquarters located at 951 Yamato Road, Suite 175, Boca Raton, FL 33431. Defendant Freedom is authorized to conduct, and so regularly conducts, business in the State of Florida.

7. Defendant Freedom regularly engages in the business of mortgage lending and/or servicing of mortgages, is a citizen of the State of Florida, and has done substantial business in the State of Florida. At all times material hereto, Defendant Freedom either acquired the loan at issue and/or the servicing rights as it relates to the loan at issue and is the current servicer of the loan as defined in 12 U.S.C. 2605(i)(2) and 12 C.F.R. § 1024.2(b).

8. Defendant is a "servicer" as defined by TILA and Regulation Z. *See* 15 U.S.C. § 1602(g); 12 C.F.R. 1026.36(c).

9. Freedom has regularly acted a mortgage servicer and collector of mortgage loan debts in this District and sent Plaintiff and Class Members Payoff Statements imposing on them "other associated fees" for payoffs of their loans here.

10. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises out of the FDCPA, a federal statute.

11. This Court also has jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d). CAFA's requirements are satisfied in that

(1) the members of the Class exceed 100; (2) the citizenship of at least one proposed Class member is different from that of the Defendant; and (3) the matter in controversy, after aggregating the claims of the proposed Class members, exceeds $5,000,000.00, exclusive of interest and costs.

12. The Court has supplemental jurisdiction over the FCCPA claim under 28 U.S.C. § 1367, because this claim is so related to the federal FDCPA claims that it forms part of the same case or controversy under Article III of the United States Constitution.

13. Venue is proper in the United States District Court in and for the Southern District of Florida pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in this district.

## APPLICABLE LAW

## FDCPA STATUTORY STRUCTURE

14. The purpose of the FDCPA is "to eliminate abusive debt collection practices . . . to promote consistent State action to protect consumers against debt collection abuses…" 15 U.S.C. § 1692.

15. The FDCPA prohibits debt collectors, including Freedom, from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt", 15 U.S.C. § 1692e, or "unfair or unconscionable means to collect or attempt to collect any debt", 15 U.S.C. § 1692f, and specifically prohibits, *inter alia*, the following:

a. False representations or misrepresentations of "the character, amount, or legal status of any debt", 15 U.S.C. § 1692e(2)(A);

b. False representations or misrepresentations of any "compensation which may be lawfully received by [the] debt collector for the collection of a debt", 15 U.S.C. § 1692e(2)(B);

c. "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law", 15 U.S.C. § 1692f (1); and

d. "The use of any false representation or deceptive means to collect or attempt to collect" a debt, 15 U.S.C. § 1692e (10).

16. Importantly, the Consumer Financial Protection Bureau ("CFPB") has expressly found that mortgage servicers that charge so-called "junk fees" violate the FDCPA by collecting amounts that are not "expressly authorized by the agreement creating the debt or permitted by law," which is explicitly defined as an "unfair or unconscionable means" of attempting to collect a debt. *See* https://consumerfinance.gov/rules-policy/final-rules/advisory-opinion-on-debt-collectors-collection-of-pay-to-pay-fees. Moreover, the CFPB has separately found that "servicers engaged in unfair acts or practices by charging property inspection fees on Fannie Mae loans where such inspections were prohibited by Fannie Mae guidelines." *See* https://consumerfinance.gov/data-research/ research-reports/supervisory-highlights-issue-33-spring-2024/.

**FCCPA STATUTORY STRUCTURE**

17. The purpose of the FCCPA is to "provide the consumer with the most protection possible." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) (citing § 559.552, Fla. Stat.).

18. The FCCPA prohibits persons, including Freedom, from engaging in certain abusive practices in the collection of consumer debts. *See generally* § 559.72, Fla. Stat. (2023).

19. Specifically, the FCCPA states that no person, shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of

some other legal right when such person knows that the right does not exist." § 559.72(9), Fla. Stat. The FCCPA defines both "debt" and "consumer debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." § 559.55(6). A "consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt." § 559.55(8).

## §701.04 STATUTORY STRUCTURE

10. Fla. Stat § 701.04 was amended effective October 1, 2023, and provides in pertinent part as follows:

> (1)
> (a) Within 10 days after receipt of the **written request of a mortgagor, a record title owner of the property, a fiduciary or trustee lawfully acting on behalf of a record title owner, or any other person lawfully authorized to act on behalf of a mortgagor or record title owner of the property**, the mortgagee or mortgage servicer shall send or cause to be sent an estoppel letter setting forth the unpaid balance of the loan secured by the mortgage. If the written request is made by a person other than the mortgagor, the request must include a copy of the instrument showing such person's title in the property or other lawful authorization, and the mortgagee or mortgage servicer must notify the mortgagor of the request.
>
> (b) The estoppel letter must at a minimum include:
>
> **1.** The unpaid balance of the loan secured by the mortgage as of the date specified in the estoppel letter, **including an itemization of the principal, interest, and any other charges comprising the unpaid balance**; and
>
> **2.** Interest accruing on a per-day basis for the unpaid balance from and after the date specified in the estoppel letter, if applicable.

Fla. Stat. § 701.04 (emphasis added)

11. Furthermore, the statute "requires a holder of a mortgage to deliver to the mortgagor [or record title holder of the property], upon request, a written estoppel letter setting forth not only

the unpaid balance of the loans secured by the mortgage but 'any other charges *properly due* under or secured by the mortgage'" and "the Legislature expressly contemplated a cause of action based on the parties' respective obligations under the statute." *Laptopplaza, Inc. v. Wells Fargo Bank, NA*, 276 So. 3d 375, 376 (Fla. 3d DCA 2019) (emphasis in original). Accordingly, under section 701.04, it is unlawful in Florida for a mortgagee or its agents to deliberately inflate amounts properly due under or secured by a mortgage and the statute affords mortgagor and property owners a private right of action to enforce the provision. *Id*.

12. Lastly, because "section 701.04 becomes a part of a contract between a mortgagor and a mortgagee," a property owner "has a breach of contract action against a mortgagee if the mortgagee provides an intentionally false estoppel letter." *Id*.

## FACTUAL ALLEGATIONS TO PLAINTIFF

13. Taborda is the owner and holder of fee-simple title to the residential property located at 156 NE 24th Avenue, Homestead, FL 33033 (the "Property"). On August 2, 2024, Plaintiff purchased the Property at a homeowners' association foreclosure sale. The homeowners' association had foreclosed on the Property because the previous owner failed to pay homeowners' association fees, a junior mortgage. Florida Statutes permit homeowners' associations to foreclose under that circumstance to enable them to recover their unpaid fees.

14. By purchasing the Property at the homeowners' association's foreclosure action, Taborda took title to the Property subject to a senior first mortgage of record given by the previous owners, Edward Kenneth Ireland and Stephanie Ann Fernandez, to Eagle Home Mortgage, LLC ("Eagle"), which was in default at the time that Taborda took title (the "Mortgage").

15. Although Eagle is the original mortgagor under the Mortgage, based upon an assignment of mortgage executed on or about May 11, 2022, at all relevant times, Freedom was

the holder and servicer of the Mortgage, which is a conforming conventional mortgage loan subject to Fannie Mae regulations. Freedom was assigned the servicing rights after the Mortgage went into default on or about June 1, 2020. A foreclosure action on the Mortgage was commenced in *Freedom Mortgage Corporation v. Edward Keith Ireland, et al.*, Case No. 2022-014915-CA-01 (the "Foreclosure"), was filed on August 24, 2022.

16. Soon after taking title to the Property, Plaintiff began efforts to communicate with Freedom to determine what amounts were left unpaid on the Mortgage so that he could satisfy the final judgment entered in the Foreclosure and obtain clear title. This process - the determination of amounts unpaid on a mortgage so that the property can be purchased with clear title - is conducted through the transmittal of an "estoppel letter" and is recognized under Fla. Stat. § 701.04, which prohibits lenders and their agents from deliberately inflating amounts properly due under a loan secured by a mortgage in Florida.

17. Plaintiff contacted Freedom to receive an accurate payoff statement. In accordance with under Fla. Stat. § 701.04, concerning the outstanding amounts on the mortgage. In response, Freedom's counsel sent to Plaintiff a "Post Judgment Payoff Quote" on September 12, 2024, representing that the document was based off Freedom's records.

18. The Post Judgment Payoff Statement did not comply with the requirements for an accurate payoff statement under Florida law and contained numerous entries for fees that were vague and impermissible, such as "escrow advances", "property inspection", "property preservation" and "attorneys' fees and costs" which had not been awarded by the foreclosure court. The total amount of these additional fees exceeded $14,000.00.

19. The Post Judgment Payoff Statement nowhere specifies what these "escrow advances", "property inspection", "property preservation" and "attorneys' fees and costs" required

to be paid as part of the "Grand Total" are. Freedom's counsel did not state how these fees were calculated, whether they may be disputed, or what provision of the uniform mortgage loan instrument gives rise to them. The payoff amount was to be paid directly to Freedom.

20. Plaintiff after reviewing the additional amounts of fees and costs added to the Post Judgment Payoff Statement did not understand how they were derived, as concerned of their accuracy, or even if they were valid. To add to Plaintiff's concerns, the Post Judgment Payoff Statement contained a statement that Freedom's counsel could not verify the accuracy of the figures.

21. Thereafter, on March 24, 2025, Plaintiff, pursuant to industry regulations and Florida law, sent a written request, via USPS Priority Mail, to Freedom for it to send an accurate and itemized payoff statement as it was its obligation. As required by Florida Statute § 701.04 Plaintiff provided Freedom proof of title ownership over the Property. A copy of Plaintiff's March 24th payoff request is attached hereto as Exhibit "A."

22. The statutorily mandated 10-day response time for Freedom to comply with Plaintiff's payoff statement request came and went without response or compliance. Therefore, Plaintiff on April 16, 2025, resent, via USPS Priority Mail, his request for an accurate payoff statement with proof of ownership. A copy of Plaintiff's April 16th payoff request is attached hereto as Exhibit "B."

23. On April 25, 2025, Plaintiff received a letter from Freedom, dated April 22, 2025, addressed to him, with the subject being the Property address, a copy of which is attached hereto as Exhibit "C." In the body of the letter Freedom states:

> We have received your request for a payoff figure on the above referenced property serviced by Freedom Mortgage. The total payoff due on this loan is $$468,299.43. This amount includes accrued interest and other associated fees. This payoff quote is good

> through April 25, 2025. Additional per diem interest will accrue up until the date the funds are tendered. Thereafter, after the payoff good through April 25, 2025, you will need to request a new payoff statement letter.

The "payoff statement letter", identified as Exhibit "C" was wholly deficient. The payoff letter, as a first matter completely failed to comply with Florida law as it did not include an itemization of the principal, interest, and any other charges comprising the unpaid balance. Nor did the statement include the amount of interest accruing on a per-day basis for the unpaid balance from and after the date specified in the estoppel letter. All the payoff letter contained was a total amount of "$$468,922.43" which Plaintiff believes is overstated and inaccurate. The lack of itemization violates Fla. Stat. §701.04(1)(b) specifically.

24. The payoff statement is further misleading as Freedom states that the total amount of "$$468,922.43" includes "accrued interest and other associated fees." These "other associated fees" were not itemized, described, or otherwise explained, but were nevertheless included in the total amount due. Freedom did not provide evidence as to how these purported charges and/or fees were calculated, whether they may be disputed, or what provision of the mortgage agreement gave rise to them.

25. In addition to (1) presenting unlawfully inflated total amounts due in the payoff statement, which incorporated uncollectable charges for unauthorized and unlawful junk fees, and (2) being insufficiently transparent and otherwise deceptive by failing to accurately describe and detail each charge purportedly authorized by the mortgage agreement, the payoff statement is also (3) unnecessarily confusing and vague as lacking and explanation as to what "other associated fees" are.

26. Freedom knows that demands for payment containing the non-itemized amorphous charges of "accrued interest and other associated fees" is misleading as it does not give consumers,

such as Plaintiff and Class Members, the ability to knowledgably assess the validity of the claimed debt.

27. In response to the legally defective and inaccurate payoff statement Plaintiff received from Freedom. On May 22, 2025, Plaintiff sent to Freedom, via USPS Priority Mail, a letter detailing Freedom's errors contained in the April 22, 2025 payoff statement, and requested Freedom send an accurate payoff statement containing the statutorily mandated breakdown and explanation of fees. Moreover, Plaintiff explained that Freedom's continued refusal to provide an accurate payoff statement and refusal to provide requested statements was causing Plaintiff harm in his inability to refinance or sell the property with the Mortgage continuing to cloud title. A copy of Plaintiff's letter of May 22, 2025 is attached hereto as Exhibit "D."

28. Again, Freedom ignored Plaintiff's request for an accurate payoff statement. Plaintiff continued to request an accurate payoff statement from Freedom, as is his right, with no response. As of the date of this filing Freedom has not responded to Plaintiff's requests for an accurate payoff statement.

29. Freedom's actions in refusing to provide an accurate payoff statement caused additional damages to Plaintiff in additional interest charges, charges for having to carry the property, lost opportunity of sales in a rapidly changing market, and charges for having to mail requests for payoff statements and dispute their accuracy. There simply was no legitimate legal reason for Freedom not to provide an accurate payoff statement as requested.

30. All in all, no reasonable consumer in Plaintiff's shoes, much less "the least sophisticated" consumer, could make an informed decision regarding the legitimacy of the debt claimed by Freedom, which renders the April 22, 2025 payoff statement letter unfair and misleading in violation of the prohibitions against "false, deceptive, or misleading representation

or means in connection with the collection of any debt" and "unfair or unconscionable means to collect or attempt to collect any debt" in 15 U.S.C. §§ 1692e and 1692f, respectively.

31. Freedom also violated those provisions of the FDCPA by attempting to collect amounts for unsubstantiated charges not authorized by the Mortgage, and for services that were never performed or prohibited under applicable federal regulations, because it attempted to collect amounts *not* "expressly authorized by the agreement creating the debt or permitted by law." And those actions separately violated section 559.72 of the FCCPA because Freedom used the payoff statement letter to expressly "[c]laim, attempt, or threaten to enforce a debt" and/or "assert the existence of some other legal right" when it *necessarily* "kn[ew] that the debt is not legitimate" given that the charges for purported property inspections are *expressly* prohibited by applicable Fannie Mae rules, which is publicly available knowledge Freedom is charged with having by operation of law.

32. Lastly, because the April 22, 2025 payoff statement letter was sent in response to Plaintiff's communication regarding the Property, which qualifies as an estoppel request under § 701.04, Freedom violated § 701.04(1)(a) by including inflated charges that were not authorized by the Mortgage and otherwise not owed by Plaintiff under applicable law. For example, the Payoff Statement demanded that Plaintiff pay for charges for "accrued interest and other associated fees" even though there is no indication how these charges were derived, how they were calculated, where in the Mortgage they are allowed, or if they could be disputed.

## CLASS ACTION ALLEGATIONS

33. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a class of similarly situated individuals and entities, defined as follows:

> All persons in the State of Florida, during the applicable statute of limitations period, (1) own property in the State of Florida encumbered by mortgage loans obtained for personal, family, or household use, (2) where those mortgage loans are serviced by Freedom, (3) collected or attempted to collect, using Payoff Statements that contained (a) overstated fees; or (b) fees that were not allowed under the law or mortgage agreement; (c) or charged for "accrued interest and other associated fees" that are not itemized, described, or otherwise explained, incorporated in the total amount owed in payoff/estoppel letters.
>
> Excluded from the Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

34. Plaintiff reserves the right to modify or amend the proposed class definitions before the Court determines whether certification is appropriate.

35. Under Fed. R. Civ. P. 23(a)(1), the proposed class is made up of at least 100, based on Freedom's servicing of over 500,000 Florida loans (per public data), the joinder of whom are impracticable except by means of a class action. The disposition of the claims in a class action will benefit both the parties and the Court. The exact number of class members can be determined through discovery and review of Freedom's business records.

36. The proposed class is ascertainable because it is defined by reference to objective criteria. In addition, and upon information and belief, the names and addresses of all members of the proposed class can be identified in business records maintained by Freedom.

37. In conformance with Fed. R. Civ. P. 23(a)(2), all Class Members' claims (including Plaintiff's) are unified in that they arise from the same improper charging and collection practices

arising out of materially identical circumstances. Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the proposed classes.

38. Consistent with Fed. R. Civ. P. 23(a)(3), Plaintiff is a member of the class it seeks to represent. Its claims are typical of all other Class Members. All Class Members' claims are unified, as all were victims of the same charging practices.

39. Consistent with Fed. R. Civ. P. 23(a)(4), Plaintiff will adequately represent the class because it has interests in common with the proposed Class Members and it has retained attorneys who are experienced in class action litigation.

40. Pursuant to Fed. R. Civ. P. 23(b)(3), there is a well-defined community of interest in the questions of law and fact involving and affecting the class to be represented by Plaintiff. Common questions of law and/or fact predominate over any questions affecting only individual members of the class. Individual variations are minimal as Freedom uses standardized payoff templates. Common questions include, but are not limited to, the following:

- Whether Freedom's imposition of unauthorized and unlawful charges for "accrued interest and other associated fees" that are not itemized, described, or otherwise explained, incorporated in the Total Amount Owed in payoff/estoppel letters violate the FCCPA;
- Whether Freedom's imposition of unauthorized and unlawful charges for "accrued interest and other associated fees" that are not itemized, described, or otherwise explained, incorporated in the Total Amount Owed in payoff/estoppel letters violate the FDCPA;
- Whether Freedom's imposition of unauthorized and unlawful charges for "accrued interest and other associated fees" that are not itemized, described, or

otherwise explained, incorporated in the Total Amount Owed in payoff/estoppel letters violate Fla. Stat. § 701.04;

- Whether Plaintiff and Class Members are entitled to statutory damages under the FCCPA and the amounts thereof;
- Whether Plaintiff and Class Members are entitled to statutory damages under the FDCPA and the amounts thereof
- Whether Plaintiff and Class Members are entitled to statutory damages under Fla. Stat. § 701.04 and the amounts thereof;
- Whether Plaintiff and Class Members suffered actual damages, and the measure and amount of those damages; and
- Whether Plaintiff and Class Members are entitled to recover statutory damages.

41. Further, the prosecution of separate actions by individual members of the proposed classes would create a risk of:

- Inconsistent or varying adjudications concerning individual members of the class that would establish incompatible standards of conduct for the defendant opposing the class; and
- Adjudication with respect to individual members of the class that would, as a practical matter, be dispositive of the interests of other members not parties to such adjudications, and/or substantially impair or impede the ability of other non-party class members to protect such individual interests.

42. The class action method is appropriate for the fair and efficient prosecution of this action.

43. Individual litigation of all claims that might be asserted by all class members would produce such a multiplicity of cases that the judicial system, having jurisdiction of the claims, would remain congested for years. Class treatment, by contrast, provides manageable judicial treatment calculated to bring a rapid conclusion to all litigation of all claims arising out of the conduct of the defendant.

44. The certification of the class would allow litigation of claims that, in view of the expense of the litigation, may be an insufficient amount to support separate actions.

## COUNT I

### Violation Florida Statute § 701.04

45. Plaintiff repeats and realleges paragraphs 1 through 32 as if fully stated herein.

46. Section 701.04, Florida Statutes, provides for a statutory cause of action for the deliberate inflation of amounts properly due and secured by a mortgage.

47. At all material times herein, Freedom's Payoff Statements are considered "estoppel letter(s)" as they are documents that set forth the unpaid balance of the loan secured by the mortgage on the Property.

48. At the time all payoff figure requests were made, Plaintiff and the members of the Class were the "record title owner" of their properties at issue.

49. Plaintiff and the members of the Class made all payoff figure requests in writing.

50. The Payoff Statements alleged herein do not accurately set forth the balance of the unpaid balance of the loan secured by the mortgage because it sets forth charges that are not properly due, that were not authorized by contract or law or exceeded amounts authorized by contract or law.

51. Based on the foregoing allegations, Freedom violated Section 701.04, Florida Statutes, by attempting to collect unauthorized and unsubstantiated charges for “accrued interest and other associated fees” incorporated in the Total Amount Owed in payoff/estoppel letters, when, as stated above, it knew that the fees, and as a necessary result, the total amounts incorporating them, were not legitimate debts.

52. These violations of Section 701.04 caused injury to Plaintiff and Class Members by violating the foregoing statutory rights.

53. As a result of these violations, Plaintiff and Class Members are entitled to statutory damages together with reasonable attorney’s fees and costs under Section 701.04, Florida Statutes.

## COUNT II

### Violation of Florida Consumer Collection Practices Act

54. Plaintiff repeats and realleges paragraphs 1 through 32 as if fully stated herein.

55. Section 559.72, Florida Statutes, of the FCCPA mandates that “no person” shall engage in certain practices in collecting consumer debts.

56. Freedom is a “person” within the meaning of the FCCPA.

57. The mortgage loans encumbering the properties of Plaintiff and Class Members, and being serviced by Freedom, are each a “debt” under the FCCPA because each one is “an[] obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.” § 559.55(6), Fla. Stat.

58. The FCCPA creates a private right of action. *See* § 559.77, Fla. Stat.

59. The Florida Legislature created shared, substantive statutory rights of Plaintiff and Class Members to be enforced and protected privately under the FCCPA, which Freedom violated. §§ 559.72, 559.72(9), 559.77, Fla. Stat.

60. Under Section 559.72, Florida Statutes,

In collecting consumer debts, no person shall:

……

> (9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows that the right does not exist.

61. Accordingly, Freedom violated Section 559.72(9), Florida Statutes, by using the Payoff Statement in an attempt to collect: (1) misleading and unsubstantiated amounts for "accrued interest and other associated fees" that are not appropriately itemized, described, or otherwise explained, but are nevertheless incorporated into the Total Amount Owed due provided to consumers in payoff/estoppel letters, which it represented in the Payoff Statements in an intentionally confusing, inaccurate manner, or in a manner that would likely mislead a consumer.

62. Freedom attempted to collect such amounts with actual knowledge that it had no legal right to impose such charges. As a result, Freedom unlawfully claimed to be owed, and attempted to collect, amounts that it knew were uncollectable and not otherwise owed under the Mortgage and/or applicable laws and regulations, when it sent the Payoff Statement.

63. These violations of the FCCPA caused injury to Plaintiff and Class Members by infringing upon the foregoing substantive statutory rights and otherwise depriving them of the protections intended by the Florida Legislature.

64. As a result of these violations, Plaintiff and Class Members are entitled to statutory damages together with reasonable attorney's fees and costs under Section 559.77, Florida Statutes.

**COUNT III**

**Violation of Fair Debt Collection Practices Act**

65. Plaintiff repeats and realleges paragraphs 1 through 32 as if fully stated herein.

66. Plaintiff and each Class Member was a "consumer" as defined by 15 U.S.C. § 1692a(3).

67. The mortgage loans encumbering the property of Plaintiff and Class Members, which Freedom services, are debts under the FDCPA as defined in 15 U.S.C. § 1692a(5) because each mortgage is "an[] obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . [that is]…primarily for personal, family, or household purposes."

68. Freedom is a debt collector of those mortgage loans as defined by 15 U.S.C. § 1692a(6) because each regularly attempts to collect, and collects, amounts owed or asserted to be owed or due another, including the mortgage debts from Plaintiff and Class Members via Payoff Statements.

69. Freedom engaged in direct "communications" with Plaintiff and Class Members as defined by 15 U.S.C. § 1692a(2) when they sent them or their representatives Payoff Statements, purportedly demanding money due for reinstatement or payoff of their mortgage loans.

70. The FDCPA creates a private right of action under 15 U.S.C. § 1692k and Congress intended that the substantive statutory rights that Plaintiff and the Class Members share be privately enforced and protected under the FDCPA.

71. 15 U.S.C. §1692e reads, in relevant part, as follows:

> "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> ……
>
> (2) The false representation of—
> (A) the character, amount, or legal status of any debt; or
> (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
>
> ……
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

72. 15 U.S.C. § 1692f reads, in relevant part, as follows:

> "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

73. Defendant, Freedom, used unfair and deceptive means of collecting consumer debts in the regular course of its mortgage servicing business, including by engaging in a pattern and practice of attempting to collect unauthorized, unsubstantiated and otherwise unlawful charges stated in intentionally inflated Payoff Statements provided to Florida homeowners, which is in direct contravention of the prohibitions in 15 U.S.C. §1692e and 15 U.S.C. § 1692f.

74. Freedom's violations of the FDCPA caused injury, including tangible harms like delayed sales, to Plaintiff and Class Members by infringing upon their substantive statutory rights under the FDCPA and otherwise depriving them of the protections Congress intended.

75. Such injuries entitle Plaintiff and Class Members to statutory damages together with reasonable attorney's fees and costs under 15 U.S.C. § 1692(k).

## JURY DEMAND

76. Plaintiff respectfully requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff, on behalf of itself and on behalf of all others similarly situated, prays for an Order as follows:

- Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the Class as defined, *supra*;
- Designating Plaintiff as representative of the Class, and its undersigned counsel as Class Counsel;
- Entering judgment in favor of Plaintiff, and the Class against Defendant;
- Awarding Plaintiff, and the Class their actual damages;
- Awarding Plaintiff, and the Class their statutory damages;
- Awarding pre- and post-judgment interest;
- Granting injunctive relief enjoining Freedom's practices;
- Awarding Plaintiff, and the Class attorneys' fees and costs, including interest thereon, as allowed or required by law; and
- Granting all such further and other relief as this Court deems just and appropriate.

Dated: August 22, 2025.

By: *Scott D. Hirsch*
Scott D. Hirsch
**SCOTT HIRSCH LAW GROUP**
Fla. Bar No. 50833
6810 N. State Road 7
Coconut Creek, FL 33073
Tel: (561) 569-6283
Email: scott@scotthirschlawgroup.com