UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-cv-23794-ALTMAN

JHONNY TABORDA,

　　　*Plaintiff,*

*v.*

FREEDOM MORTGAGE CORP.,

　　　*Defendant.*

_____/

## ORDER GRANTING MOTION TO DISMISS

Our Plaintiff, Jhonny Taborda, brings this putative class action against the Defendant, Freedom Mortgage Corporation ("Freedom"), alleging that Freedom failed to provide homeowners with accurate statements about the mortgages it services. *See generally* Complaint [ECF No. 1]. In his Complaint, Taborda advances three claims: (1) a violation of FLA. STAT. § 701.04 (Count I); (2) a violation of the Florida Consumer Collection Practices Act ("FCCPA") (Count II); and (3) a violation of the Fair Debt Collection Practices Act ("FDCPA") (Count III). *See id.* ¶¶ 45–75.

Freedom has moved to dismiss Taborda's Complaint on several grounds. *See generally* Motion to Dismiss ("MTD") [ECF No. 8]. The MTD is now fully briefed and ripe for adjudication. *See* Response in Opposition to MTD ("Response") [ECF No. 13]; Reply in Support of MTD ("Reply") [ECF No. 17]. After careful review, we **GRANT** the MTD.

### BACKGROUND

#### I.　　Factual History

On August 2, 2024, Taborda, "through his single member LLC, Ashbry LLC," purchased "the residential property located at 156 NE 24th Avenue, Homestead, FL 33033 (the 'Property')" at a foreclosure sale. Complaint ¶ 13. "By purchasing the Property at the [ ] foreclosure action," Ashbry

LLC took title to the Property "subject to a senior first mortgage of record given by the previous owners, Edward Kenneth Ireland and Stephanie Ann Fernandez, to Eagle Home Mortgage, LLC ('Eagle'), which was in default at the time that Taborda took title (the 'Mortgage')." *Id.* ¶ 14. "Although Eagle is the original mortgagor under the Mortgage, based upon an assignment of mortgage executed on or about May 11, 2022, at all relevant times, Freedom was the holder and servicer of the Mortgage[.]" *Id.* ¶ 15.

"Soon after taking title to the Property, [Taborda] began efforts to communicate with Freedom to determine what amounts were left unpaid on the Mortgage so that he could satisfy the final judgment entered in the Foreclosure and obtain clear title." *Id.* ¶ 16. Taborda requested a "payoff statement" from Freedom "concerning the outstanding amounts on the [M]ortgage." *Id.* ¶ 17. On September 12, 2024, in response to Taborda's request, counsel for Freedom sent Taborda a letter we'll refer to as the "September Payoff Quote." *Ibid.*; *see also* Exhibit K to the MTD (the "September Payoff Quote") [ECF No. 8-11].[1] The September Payoff Quote "contained numerous entries for fees that were vague and impermissible, such as 'escrow advances,' 'property inspection,' 'property preservation' and 'attorneys' fees and costs[.]' . . . The total amount of these additional fees exceeded $14,000.00." Complaint ¶ 18.

Concerned, Taborda twice requested that Freedom send him "an accurate and itemized payoff statement" explaining these fees. *Id.* ¶¶ 21–22; *see also* Exhibit A (the "March Payoff Request") [ECF

---

[1] "Generally, when considering a motion to dismiss, the district court must limit its consideration to the pleadings and any exhibits attached to it." *Baker v. City of Madison, Ala.*, 67 F.4th 1268, 1276 (11th Cir. 2023) (citing *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000)). But the "incorporation-by-reference" doctrine "permit[s] district courts to consider materials outside a complaint at the motion-to-dismiss stage." *Ibid.* "[A] court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). We can consider the September Payoff Quote here because it's repeatedly referenced in the Complaint, its authenticity is uncontested, and it's central to Taborda's claims.

No. 1-1]; Exhibit B (the "April Payoff Request") [ECF No. 1-2]. Freedom responded on April 22, 2025, with the following message: "We have received your request for a payoff figure on the above referenced property serviced by Freedom Mortgage. The total payoff due on this loan is $468,299.43. This amount includes accrued interest and other associated fees." Complaint ¶ 23 (citing Exhibit C (the "April Payoff Letter") [ECF No. 1-3]). This correspondence exacerbated Taborda's concerns because it "did not include an itemization of the principal, interest, and any other charges comprising the unpaid balance" *or* explain the "accrued interest and other fees." *Id.* ¶¶ 23–24.

A little over a month later, Taborda wrote again to Freedom and explained that "Freedom's continued refusal to provide an accurate payoff statement . . . was causing [Taborda] harm in his inability to refinance or sell the property with the Mortgage continuing to cloud title." *Id.* ¶ 27; *see also* Exhibit D (the "May Payoff Request") [ECF No. 1-4]. "Again, Freedom ignored [Taborda's] request for an accurate payoff statement. [Taborda] continued to request an accurate payoff statement from Freedom, as is his right, with no response." Complaint ¶ 28. As of the date he filed his Complaint, Taborda hadn't received the payoff information he'd requested. *See ibid.*

## II.    Statutory Framework

Taborda brings his claims under three state and federal statutes. Count I alleges a violation of FLA. STAT. § 701.04, which requires, in relevant part, mortgage servicers to provide mortgagors (or any person lawfully authorized to act on behalf of a mortgagor) with an "estoppel letter setting forth the unpaid balance of the loan secured by the mortgage" within 10 days of the receipt of a written request. FLA. STAT. § 701.04(1)(a). This estoppel letter must include "[t]he unpaid balance of the loan secured by the mortgage as of the date specified in the estoppel letter, including an itemization of the principal, interest, and any other charges comprising the unpaid balance," plus any amount of "[i]nterest accruing on a per-day basis for the unpaid balance from and after the date specified in the estoppel letter, if applicable." *Id.* § 701.04(1)(b)(1)–(2).

Counts II and III allege violations of the federal and Florida consumer-protection statutes— the FDCPA and FCCPA, respectively. The FDCPA prohibits creditors and debt collectors from engaging in certain abusive debt-collection practices. Specifically, it bars debt collectors from using (among other things) "any false, deceptive, or misleading representation or means in connection with the collection of any debt" and prohibits the use of "unfair or unconscionable" means of collection. 15 U.S.C. §§ 1692e, 1692f; *see also id.* § 1692f(1) (prohibiting the collection of any amount "including any interest, fee, charge, or expense incidental to the principal obligation unless such amount is expressly authorized by the agreement creating the debt or permitted by law." (cleaned up)). The FCCPA similarly curbs abusive debt-collection practices. *See generally* FLA. STAT. § 559.72. It states, in part, that no person shall "[c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." *Id.* § 559.72(9).

As relevant here, these statutes only protect "consumers," which both statutes define as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3); FLA. STAT. § 559.55(8) (including "debtor" in the same definition). The FDCPA defines "debt," or "consumer debt," as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). Under the FCCPA, "debt" has the same definition. *See* FLA. STAT. § 559.55(6).

## THE LAW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this

"plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ibid.* (quoting *Twombly*, 550 U.S. at 555). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Priv. Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff[.]" *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016).

### ANALYSIS

In its MTD, Freedom advances three arguments for dismissal. *First*, it contends that Taborda can't assert any of his claims because Ashbry LLC (not Taborda) held title to the property when the alleged violations occurred. *See* MTD at 11 ("Since Taborda is not the record title owner despite his express allegations to the contrary, and Ashbry LLC is not a natural person, Taborda simply ignores this problem and disregards Ashbry LLC's existence in order to attempt to make his claims work."). *Second*, it argues that neither the September Payoff Quote nor the April Payoff Letter are "debt collection" activities within the meaning of the FDCPA and the FCCPA. *See id.* at 13 ("[C]orrespondence sent in response to a borrower's request is not debt collection for FDCPA and FCCPA purposes."). *Third*, Freedom claims that it had no duty to sub-itemize charges on the statements it sent to Taborda. *See id.* at 14. We'll address these arguments in turn.

### I.       Taborda Isn't a Consumer Under the Consumer-Protection Statutes

"To recover under both the FDCPA and the FCCPA (a Florida state analogue to the federal FDCPA), a plaintiff must make a threshold showing that the money being collected qualifies as a 'debt.'" *Agrelo v. Affinity Mgmt. Servs., LLC*, 841 F.3d 944, 950 (11th Cir. 2016) (quoting *Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 836–37 (11th Cir. 2010)). "The mere obligation to pay does not constitute a 'debt' under the FDCPA and FCCPA. Instead, under both statutes, a debt is any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *Ibid.* (cleaned up). "In other words, the FDCPA and FCCPA apply *only* to payment obligations of a (1) *consumer* arising out of a (2) transaction in which the money, property, insurance, or services at issue are (3) primarily for personal, family, or household purposes." *Ibid.* (cleaned up & emphases added).

Freedom argues that Taborda isn't a "consumer" within the meaning of the FDCPA and the FCCPA because he didn't hold title to the Property when the relevant communications took place. *See* MTD at 10 ("Here, Taborda is not a debtor or alleged debtor. To avoid the fact that all relevant events involve Ashbry LLC, not Taborda individually, Taborda appears to seek to have this Court simply disregard Ashbry LLC's existence because he is purportedly its sole member."). Taborda acknowledges that, from August 2, 2024, through July 12, 2025, only Ashbry LLC held title to the Property. *See* Complaint ¶ 5 ("On August 2, 2024, through his single member LLC, Ashbry LLC, Taborda purchased the home[.]"); *see also* Response at 7 ("[A]s of July 12, 2025, Taborda became a record title owner of the property through the quitclaim deed executed by Ashbry LLC[.]"). And the communications that gave rise to Taborda's claims occurred exclusively during this period. *See* Complaint ¶¶ 18–27 (detailing communications from September 2024 to May 2025). Indeed, the

Certificate of Title that's attached to the March Payoff Request confirms that the Property was sold to "Ashbry LLC," not Taborda. March Payoff Request at 3.[2]

Given this timeline, we agree with Freedom that Taborda wasn't a "consumer" or "debtor" for purposes of the FDCPA and the FCCPA because he wasn't "obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3); FLA. STAT. § 559.55(8); *see also* MTD at 10 ("[A]ll relevant events involve Ashbry LLC, not Taborda individually . . . even if Ashbry LLC had an obligation or alleged obligation to pay off Fernandez's mortgage, which it did not, that is not an obligation or alleged obligation of Taborda himself."). Limited liability companies—and the corporate form more generally—exist to shield their owners from business liabilities. *See, e.g.*, FLA. STAT. § 605.0304(1) ("A debt, obligation, or other liability of a limited liability company is solely the debt, obligation, or other liability of the company. A member or manager is not personally liable, directly or indirectly, by way of contribution or otherwise, for a debt, obligation, or other liability of the company solely by reason of being or acting as a member or manager."); *see also Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 591 U.S. 430, 435 (2020) ("[I]t is long settled as a matter of American corporate law that separately incorporated organizations are separate legal units with distinct legal rights and obligations." (cleaned up)).

If anyone had to pay the Mortgage, then, it was *either* the original borrowers *or* Ashbry LLC— *not* Taborda. Ashbry LLC purchased the Property and held title subject to Freedom's senior mortgage during the relevant period. Taborda—by virtue of purchasing the Property through his LLC—ensured

---

[2] In his Complaint, Taborda claims that he "took title to the property" in 2024. Complaint ¶ 14. But this statement is flatly contradicted by *both* the exhibits *and* Taborda's own briefing. *See* March Payoff Request at 3 (certificate of title confirming that the property was sold to "Ashbry LLC"); Response at 7 ("[A]s of July 12, 2025, Taborda became a record title owner of the property through the quitclaim deed executed by Ashbry LLC[.]"). And "we need not accept a complaint's allegations as true when they are contradicted by exhibits." *Pick v. Raffensperger*, 2025 WL 2954078, at *4 (11th Cir. Oct. 20, 2025).

any potential liability was Ashbry LLC's alone.[3] And Ashbry LLC can't bring suit under either the FDCPA or the FCCPA because both statutes define a consumer as a "natural person," excluding a corporate entity like Ashbry LLC. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 187–88 (1990) ("A corporation is the paradigmatic artificial 'person[.]'"); *see also SNIIIC Two LLC v. Ocwen Loan Servicing, LLC*, 2019 WL 13246530, *1 (M.D. Fla. Aug. 20, 2019) (Berger, J.) ("It is undisputed that Plaintiff is a limited liability company, not a 'natural person.' Because the statute limits relief to natural persons, Plaintiff cannot, as a matter of law, state a claim for relief under the FDCPA."); *Valhalla Inv. Props., LLC v. 502, LLC*, 832 F. App'x 413, 415 (6th Cir. 2020) (holding that an LLC is not a "natural person" under the FDCPA and finding that "the FDCPA only regulates the collection of *natural persons'* obligations to pay money"); *id.* at 414 ("Is a limited liability company a 'natural person'? This question is the heart of [this] appeal. It is also easy: No.").

Resisting this conclusion, Taborda advances four arguments—all unavailing. *First*, Taborda urges us to disregard the separate legal existence of Ashbry LLC—which owned the Property subject to the Mortgage—because he is its sole member. *See* Response at 8 ("[T]he distinction between Taborda and Ashbry LLC is particularly tenuous in this case because Taborda is the sole member and manager of Ashbry LLC."). But Taborda and Ashbry LLC are distinct parties with different rights and obligations. *See Agency for Int'l Dev.*, 591 U.S. 430 at 435 ("[I]t is long settled as a matter of American corporate law that separately incorporated organizations are separate legal units with distinct legal rights and obligations." (cleaned up)). Taborda elected to conduct business through an LLC—

---

[3] Freedom argues that Ashbry LLC wasn't a debtor at all because Ashbry LLC never assumed the Mortgage obligations. *See* MTD at 10 n.26 ("Florida law is clear that a third party title owner purchasing at a junior lien foreclosure sale does not take on the obligations under the mortgage unless they assume those obligations, which Taborda does not attempt to suggest Ashbry LLC did (and Ashbry LLC naturally would not want to do so since it would expose it to liability for any deficiency balance owed on the non-party Fernandez's debt)." (citing *Green Emerald Homes, LLC v. Residential Credit Opportunities Tr.*, 256 So. 3d 211 (Fla. 2d DCA 2018))). Taborda doesn't address this argument at all. *See generally* Response. Even so, we needn't reach the merits of this position because, as we've hinted, Ashbry LLC isn't a consumer for purposes of the relevant statutes.

presumably to avail himself of the legal protections *that* corporate form afforded him. We won't allow him to disregard the principle of corporate separateness now that its consequences are inconvenient for him.

*Second*, Taborda argues that the FDCPA and the FCCPA apply to "communications directed to non-debtors if they are made in connection with the collection of any debt." Response at 6. He insists that we should focus on "the language of the communication itself," as opposed to the status of the recipient. *Ibid.* (first citing *Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299, 1302 (11th Cir. 2014); and then citing *Daniels v. Select Portfolio Servicing, Inc.*, 34 F.4th 1260, 1281 (11th Cir. 2022)). But these cases are inapposite. Neither involved the definition of "consumer," nor did they hold that the FDCPA and the FCCPA applied to anybody other than a consumer. These cases merely described the types of correspondence that constitute communications under these statutes. *See Caceres*, 755 F.3d at 1302 (holding that "the definition of communication is very broad"); *Daniels*, 34 F.4th at 1274 (holding that mortgage statements may constitute communications under the FDCPA and the FCCPA). Here, however, the parties don't disagree that the September Payoff Quote and the April Payoff Letter constitute "communications" under the relevant statutes. *See* Reply at 3–4 ("Freedom has not challenged whether the payoff quotes here are 'communications' for purposes of this Motion"). So, Taborda's cases don't advance the ball.

In any event, Taborda's argument runs headlong into the plain text of the FDCPA and the FCCPA. As we discussed, these statutes "apply only to payment obligations of a *consumer*[.]" *Agrelo*, 841 F.3d at 950. (cleaned up & emphasis added). And we've already explained why Taborda isn't a consumer or a debtor—viz., because he was never *personally* obligated to pay any debt. His insistence that we focus on the language of the communications themselves doesn't change the fact that he doesn't fall within the class of persons these statutes were designed to protect.

*Third*, Taborda contends that he can assert these claims because "the payoff quotes were addressed to and received by him personally." Response at 6–7. But Taborda hasn't cited any authority for the proposition that a person who receives a communication on behalf of a corporate entity is somehow "obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3); FLA. STAT. § 559.55(8).[4] And that's probably because any such rule would be non-sensical: Corporate officers regularly receive communications about their organizations' liabilities without accruing those obligations *personally*.

*Fourth*, Taborda argues that he has standing to assert these claims under the FDCPA and the FCCPA because, "as of July 12, 2025, Taborda became a record title owner of the property through the quitclaim deed executed by Ashbry LLC, giving him a direct interest in the accuracy of the payoff information." Response at 7. This argument is frivolous. Taborda's claims accrued when the alleged violations took place—which, in this case, was several months before Taborda held title to the Property. *See Rotkiske v. Klemm*, 589 U.S. 8, 13 (2019) ("The FDCPA limitations period begins to run on the date the alleged FDCPA violation actually happened.").

Because Taborda is *not* a consumer or debtor under either the FDCPA or FCCPA, his claims under these statutes must be dismissed. We could end our analysis of Counts II and III here, but Taborda has failed to state a claim under either statute for a separate reason: Neither of the communications he complains about were made in connection with the collection of a debt.

## II.   The Communications Were Not Debt-Collection Activity

Freedom next argues that neither Taborda nor Ashbry LLC were subjected to any debt-collection activity. Freedom insists that Taborda merely "received payoff quotes that [he] expressly

---

[4] The only two cases Taborda cites in this section of his response are completely unrelated to this proposition. *See Daniels*, 34 F.4th at 1274 (holding that mortgage statements may constitute communications under the FDCPA and the FCCPA); *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1217 (11th Cir. 2012) (holding that a letter from a law firm could be considered debt collection under the FDCPA).

requested pursuant to a statutory provision requiring Freedom to provide the information[.]" MTD at 3. And, according to Freedom, the FDCPA and FCCPA don't apply "to every communication between a debt collector and a debtor[.] . . . For example, correspondence sent in response to a borrower's request is not debt collection for FDCPA and FCCPA purposes." *Id.* at 13 (citing *Dyer v. Select Portfolio Servicing, Inc.*, 108 F. Supp. 3d 1278, 1283 (M.D. Fla. 2015) (Moody, Jr., J.)). Taborda responds that the "payoff quotes at issue here are communications in connection with the collection of a debt because they convey information about the debt and are designed to facilitate payment[.]" Response at 9. Here, too, we agree with the Defendant.

To state a claim under the FDCPA, the challenged communications must be made "in connection with the collection of [a] debt." *See* 15 U.S.C. § 1692. "The substantive FCCPA provisions similarly require that the challenged action be made in connection with 'collecting [a] . . . debt[.]' Both Acts, therefore, require a nexus between the communication and the collection of a debt." *Daniels*, 34 F.4th at 1267 (quoting FLA. STAT. §§ 559.72(7), (9))

We consider several factors in determining whether a communication was made in connection with the collection of a debt. For example, in *Reese*, the Eleventh Circuit found that a law firm's "dunning" letter was "a communication related to 'the collection of [a] debt'" for FDCPA purposes because it (a) demanded full and immediate payment, (b) threatened collection and attorney's fees if the debt wasn't paid, and (c) was accompanied by documents expressly stating that the law firm was attempting to collect a debt. 678 F.3d at 1217. Similarly, in *Daniels*, the Eleventh Circuit found that a plaintiff had plausibly alleged that monthly mortgage statements were debt-collection communications if "(a) they contain 'this is an attempt to collect a debt' language, (b) they request or demand payment of a certain amount by a certain date, (c) they provide for a late fee if the payment is not made on time, and (d) the history between the parties suggests that the statement is an attempt to collect on a disputed debt." 34 F.4th at 1271.

When we apply these factors to the September Payoff Quote and the April Payoff Letter, we easily conclude that Freedom's communications *weren't* attempts to collect a debt. For one thing, neither of the communications include the standard "this is an attempt to collect a debt language." *Daniels*, 34 F.4th at 1271; *see also* September Payoff Quote; April Payoff Letter. In fact, the September Payoff Quote explicitly says that it *isn't* an attempt to collect a debt. *See* September Payoff Quote at 3 ("WE ARE NOT ATTEMPTING TO COLLECT THE DEBT FROM YOU PERSONALLY AT THIS TIME" (capitalization in original)). For another, neither letter demands payment in full by a certain date—nor does either threaten to impose late fees. *See generally ibid.*; April Payoff Letter. For yet another, Taborda hasn't suggested that there's a "history between the parties [that] suggests that the statement is an attempt to collect on a disputed debt." *Daniels*, 34 F.4th at 1271. Freedom sent both communications *only* in response to Taborda's requests—they were not, in other words, initiated by Freedom to trigger payment[5]—and both communications identify somebody other than Taborda/Ashbry LLC as the debtor. *See* September Payoff Quote at 2 (identifying Stephanie Ann Fernandes and Edward Kenneth Ireland as "Borrower(s)"); April Payoff Letter at 3 (identifying Edward Kenneth Ireland as "customer"). Since the correspondence Taborda received wasn't sent in

---

[5] Several courts have found this point particularly compelling. *See McElveen v. Westport Recovery Corp.*, 310 F. Supp. 3d 1374, 1380 (S.D. Fla. 2018) (Bloom, J.) ("Importantly, courts have found that letters sent for informational purposes, such as those 'sent in response to correspondence or an inquiry from a debtor are communications induced by the debtor and not the debt collector. Thus, they do not fall within the ambit of the FDCPA.'" (first quoting *Dyer*, 108 F. Supp. 3d at 1283; then citing *Goodson v. Bank of Am., N.A.,* 600 F. App'x 422, 434 (6th Cir. 2015); and then citing *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011)). We think this makes sense. The FDCPA and the FCCPA were enacted, in part, to protect consumers from being harassed by debt collectors who employ abusive practices. *See, e.g.*, 15 § 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors[.]"). And we can't say that a debt collector is engaging in an abusive practice when it's merely responding to a request for information.

connection with any effort to collect a debt, we **GRANT** Freedom's motion to dismiss Counts II and III.[6]

### III.    Taborda Hasn't Stated a Claim Under FLA. STAT. § 701.04

Finally, Freedom argues that the right to sue for a violation of FLA. STAT. § 701.04(1)—if such a right exists—"necessarily belongs to Ashbry LLC, not Taborda," because "the statutory right created by Fla. Stat. § 701.04 belongs to the record title owner: Ashbry LLC, not Taborda." MTD at 12. Taborda doesn't address this argument at all. *See generally* Response. And it's well settled that "a party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed." *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) (cleaned up).

True, Taborda does say that he can bring his claims "as the sole member of Ashbry LLC who directly requested and received the payoff quotes, as a current record title owner of the property and the individual the payoff quotes were addressed to." Response at 15. But even if we found this general argument responsive to Freedom's § 701.04(1) contention, we've already explained why it fails. *See supra* § I (finding that Taborda can't disregard Ashbry LLC's corporate separateness or retroactively accrue claims belonging to Ashbry LLC).[7]

We therefore **GRANT** Freedom's request that we dismiss Count I.

*** 

---

[6] Because we're dismissing Counts II and III for these other reasons, we needn't address Freedom's alternative view that it had no duty under the FDCPA and the FCCPA to sub-itemize the payoff quote. *See* MTD at 14.

[7] Plus, we tend to agree with Freedom that the best reading of FLA. STAT. § 701.04(1)—insofar as it even contemplates a cause of action—suggests that only the "mortgagor or record title owner of the property" could bring such a claim. See MTD at 12 ("To the extent a claim can be brought pursuant to FLA. STAT. § 701.04 . . . the statutory right created by FLA. STAT. § 701.04 belongs to the record title owner: Ashbry LLC, not Taborda."). After all, they're the parties who are directly harmed by the receipt of inaccurate information, even if the request was sent by a third party "lawfully authorized to act on behalf of a mortgagor or record title owner of the property." FLA. STAT. § 701.04(1).

Because Taborda explicitly requested leave to amend his Complaint, we'll dismiss his claims without prejudice. *See* Response at 16 ("[I]f the Court finds any technical deficiencies in the Complaint, Taborda respectfully requests leave to amend to address those deficiencies rather than dismissal with prejudice[.]"). We are, however, skeptical that Taborda will be able to maintain his FDCPA or FCCPA claims given the findings we've made here. And, without his federal claim, we won't exercise supplemental jurisdiction over his FLA. STAT. § 701.04(1) claim (assuming he chooses to replead it). *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim [ ] if-- the district court has dismissed all claims over which it has original jurisdiction[.]"). So, if Taborda elects to file an amended complaint that includes Count I, he must explain (1) why he can assert a claim under FLA. STAT. § 701.04(1) for conduct that occurred when Ashbry LLC was the sole title record holder to the Property *and* (2) whether we have jurisdiction over that claim under the Class Action Fairness Act. The second question may be especially challenging because Taborda must allege an amount in controversy exceeding $5 million for the alleged violation of a state statute that doesn't expressly provide for damages.[8] *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 590 (2013) ("The

---

[8] FLA. STAT. § 701.04(1) is silent as to any cause of action for damages. Paragraph (1)—the subsection at issue here—requires mortgage servicers, on request, to provide an "estoppel letter setting forth the unpaid balance of the loan secured by the mortgage." FLA. STAT. § 701.04(1). But that paragraph is silent as to litigation, damages, or attorney's fees. *See ibid.* By contrast, Paragraph (2) requires mortgage servicers to "execute in writing an instrument acknowledging release of the mortgage" "[w]ithin 60 days after the unpaid balance of a loan secured by a mortgage has been fully paid[.]" *Id.* § 701.04(2)(a). It further provides that "[t]he prevailing party in a civil action brought against the mortgagee or mortgage servicer to enforce the requirements of *this paragraph* is entitled to reasonable attorney fees and costs." *Ibid.* (emphasis added). Paragraph (3) similarly requires a creditor or assignee who has received full payment of a lien or judgment to execute a written instrument acknowledging satisfaction within 60 days and likewise authorizes attorney's fees for "[t]he prevailing party in a civil action brought . . . to enforce the requirements *of this subsection*[.]" *Id.* § 701.04(3) (emphasis added). The statute is thus entirely silent on the issue of statutory damages, and Paragraph (1) doesn't contemplate litigation at all, whereas Paragraphs (2) and (3) expressly sets out fee-shifting remedies for civil-enforcement actions. *See Bittner v. United States*, 598 U.S. 85, 94 (2023) ("When [the legislature] includes particular language in one section of a statute but omits it from a neighbor, we normally understand that difference in language to convey a difference in meaning (*expressio unius est exclusio alterius*)."); *see also Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 544 (2012) ("Where [the legislature] uses certain language in one part of a statute and different language in another, it is generally presumed that [it]

Class Action Fairness Act of 2005 [ ] provides that the federal district courts shall have original jurisdiction over a civil class action if, among other things, the matter in controversy exceeds the sum or value of $5,000,000." (cleaned up)). If he can't do that, he might do better in state court.

**CONCLUSION**

After careful review, therefore, we **ORDER** and **ADJUDGE** as follows:

1. The Defendant's Motion to Dismiss [ECF No. 8] is **GRANTED**.

2. The Plaintiff's Complaint is **DISMISSED** *without prejudice* and with leave to amend. If he chooses, Taborda may file an amended complaint by **April 6, 2026**.

**DONE AND ORDERED** in the Southern District of Florida on March 23, 2026.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record

---

acts intentionally."); *cf. Laptopplaza, Inc. v. Wells Fargo Bank, NA*, 276 So. 3d 375, 379 (Fla. 3d DCA 2019) (holding that FLA. STAT. § 701.04(1) creates a cause of action "by a borrower against a lender" because § 701.04(2) provides for attorney's fees).